Van Veghten <em>against</em> D. Van Veghten.

The *husband* cannot file a bill against his wife for a divorce *à mensa
et thoro*, on the ground of cruelty, desertion, or improper conduct.
So, that, if in *answer* to a bill filed by the *wife* against the husband for
a divorce, under the statute, on the ground of cruel treatment, the
husband denies the charge, and sets up acts of cruel and abusive
treatment on the *part of the wife*, and asks for a divorce, the bill
will be dismissed.
The Court will not take notice of any consent or agreement of the
parties to a divorce *à mensa et thoro*.

BILL by the wife against her husband, for a divorce *July 21st.*
*a mensa et thoro*, on a charge of cruel and inhuman treat-
ment.

The answer of the husband denied every substantial charge of improper conduct: and he recriminated, and charged the plaintiff with a series of acts of cruel and abusive treatment, and admitted that it would be proper, and intimated a strong desire that a divorce should be decreed.

The cause was set down for hearing, upon the bill and answer.

*J. V. N. Yates*, for the plaintiff.

*I. Hamilton*, contra.

THE CHANCELLOR. As the charges in the bill are denied, and not supported by proof, the foundation of the bill has failed. I cannot listen to the counter charges contained in the answer. The husband would not have been entitled to a divorce, even if such charges had been the ground of a bill exhibited by him, for that purpose. The statute authorizing a divorce from bed and board, for cruelty, desertion, or other improper conduct, applies only to a bill exhibited *on the part of the wife*. The common law has given to the husband sufficient power and control over the wife, to protect himself from such conduct. Nor can the Court take notice of any consent or desire of the defendant, in compliance with the wishes of the plaintiff, and make *that* the ground even of a qualified divorce from bed and board. It ought to be well understood, that the Court cannot lend its judicial aid and sanction to any such voluntary agreement. These qualified divorces from bed and board are dangerous enough, under all the checks and guards provided by any decree. The early *canons* of the church (*Burns, Eccle. Law*, tit. *Marriage*, ch. 11.) directed that parties so separated, should not only live chaste, and without forming any new matrimonial contract; but even that no sentence should be pronounced, *until security was given by the party requiring the decree, to obey this restraint.* The law regards

*Divorces a mensa et thoro, ought to be checked, rather than encouraged.*

the marriage contract as a stable and sacred contract, of natural, as well as of municipal law. It is a contract *juris gentium*, and parties cannot lawfully rid themselves of its duties, at the pleasure of either, or of both of them. If we except the *new* law of *France*, and the *new* law of *Prussia*, alluded to on a former occasion,* there is no such dangerous relaxation of the marriage tie, tolerated among the Christian nations. We must go in search of such loose notions of the obligation, to the half-civilized people of *Asia*, where polygamy prevails; and where, as a consequence of this evil, and as a branch of the same baneful policy, we shall find the prevalence of an almost unlimited freedom of divorce. (*Sale's Koran*, ch. 65. *Elphinstone's Caubul*, b. 2. ch. 3. *Institutes of Menu*, ch. 9. s. 122 to 126. *Colebrooke's Hindu Law*, vol. 2. p. 416 to 426. sect. 64 to 71. *Marsden's Sumatra*, p. 221 to 234. *Raffle's Hist. of Java*, vol. 1. 320. *Stanton's Ta-Tsing-Leu-Lee*, sect. 116.)

The contract of *marriage* is a stable and sacred contract of natural as well as of municipal law. It is a contract *juris gentium*, and the parties cannot, at pleasure of either or both, get rid of the duties it imposes.
* *Ante*, p. 194.

